IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALLEN DEWAYNE NASH,<br>    Plaintiff, | )<br>) Civil Case No. 7:22-cv-00589<br>) |
| v. | )<br>) By: Elizabeth K. Dillon |
| DEBORAH DAMON,[1] *et al.*,<br>    Defendants. | ) United States District Judge<br>)<br>) |

**MEMORANDUM OPINION**

Allen Dewayne Nash, a Virginia inmate proceeding *pro se*, has filed a complaint under 42 U.S.C. § 1983. The events underlying his claims all arose at Henry County Adult Detention Center (HCADC), where he was being held at all pertinent times. Nash's complaint names five medical personnel: Deborah Damon, Chris Adkins, Carrie Painter, E. Biggs, and Sarah Eves. He also sues Henry County Sheriff Lane Perry and four persons that appear to be guards or officials at HCADC: deputies Baliles, Martin, and Angles, and 1st Lt. Shumate. The case is before the court for review under 28 U.S.C. § 1915A(a). For the reasons set forth herein, Nash's claims against all defendants except defendant Sarah Eves will be dismissed.

I. BACKGROUND

Nash's complaint lists two claims and then contains a separate "Statement" with supporting detail, as well as a separate "Timeline" of events. Attached to his complaint are numerous documents, including some medical records and some HCADC grievance documents.

Nash's first claim states that defendants "failed to maintain medical care [or] provide

---

[1] Nash's complaint uses both "Damon" and "Damron" to refer to this defendant. The court uses the spelling listed first in the complaint.

[him] proper treatment for an ongoing [boil]² infection under [his] left underarm that lead to infection [and] pain." (Compl. 3, Dkt. No. 1.)

His second claim alleges that defendants failed to follow up on the high blood pressure reading Nash had upon his admission to HCADC and that no one checked his blood pressure for over four months. He submits that this led to him having "real bad headaches [and] pain that caused vision problems," as well as infections to both eyes, uncontrollable blood pressures daily, and "tingling feelings" throughout his body. (*Id.*)

The court construes both claims as asserting that defendants were deliberately indifferent to a serious medical condition. Nash does not specify under what constitutional amendment he is bringing his claims, nor does he state whether he was a convicted prisoner or a pretrial detainee at the time of these events.³ For purposes of this opinion, though, the court will evaluate Nash's claim of deliberate indifference under the Eighth Amendment. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020); *see also Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (noting that the Fourth Circuit has "traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs" and that "a pretrial detainee makes out a violation at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment") (quoting *Martin v. Gentile*, 849

---

² Throughout the complaint, Nash uses what appears to be either the word bone or bore in referring to the infection under his arm, and repeatedly refers to medical personnel lancing a "bone" or "bore." Based on the context, it appears to the court that Nash is referring to a "boil," *i.e.*, that he had a "boil infection" and that medical personnel "lanced his boil." If that understanding is incorrect, Nash should file a notice advising the court.

³ If Nash was a pretrial detainee, then the Fourteenth Amendment, not the Eighth Amendment, governs his claim concerning the denial of medical care. *Mays v. Sprinkle*, 992 F.3d 295, 300 (2021). The Eighth Amendment standards have previously been adopted in addressing such claims by a pretrial detainee, although there is a circuit split as to whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), has altered that standard. *See Mays*, 992 F.3d at 301 & n.4 (explaining the split and collecting authority). In *Mays*, the Fourth Circuit declined to resolve the issue because the case did not require it to do so. *See id* at 300–01. Similarly, because the court's resolution of Nash's claims herein would be the same under either standard, it is not necessary to determine definitively—at this time— whether he was a pretrial detainee or convicted prisoner or which standard applies.

2

F.2d 863, 870 (4th Cir. 1988)).

The facts as alleged by Nash began on July 18, 2022, when defendant Sarah Eves, who Nash identifies as an MPA-PA-C, lanced a boil caused by in-grown hair under Nash's left underarm. She told him his bandage would be changed daily and not to remove it, and she gave him ibuprofen and seven days of antibiotics. Eves cleaned and changed the gauze and bandage the following day. The day after that, defendant Damon cleaned and changed the bandage. (Compl. 5.)

Then, for two days, no one changed or cleaned Nash's bandage. From July 23 through July 28, 2022, Nash asked Deputy Baliles to call the medical department to change the bandage and clean his wound because it had not been changed and was smelling bad. According to Nash, Baliles conveyed the message to the medical department two or three times, but no one from medical ever directed Nash to report for his bandages to be changed. Nash then told Deputy Lawson that his bandage had not been changed as directed by Eves. She, too, called the medical department. She reported to him that medical staff had heard that Nash had taken the gauze out himself, so they would not clean it or change his bandages. In response, Nash asked Deputy Lawson for a grievance form, which she brought him. (*Id.*)

From July 28, 2022, until August 10, 2022, Nash had small "white heads" appear under both underarms, his chest, nose, and ear, and his eyes were so infected that he could not wear his contacts. He does not indicate that he asked for medical treatment during this time. On August 11, 2022, he pressed the emergency button in his cell because he was in pain from the boil and from not having any medicine to take. He told an unnamed deputy that nobody ever responded back to him on the emergency button. The following day, Eves lanced a second boil that appeared. (*Id.*)

3

Again, on August 14, Nash pushed the emergency button and again received no response. He instead told an unnamed deputy that he was up all night suffering from sharp pain under his arm and to his chest, jaw, ear, and head. (*Id.*) At 3:00 a.m. on August 14, Nurse Bowman called Nash to check his vitals, and he showed her two new boils that had appeared overnight. She gave him ibuprofen at that time. She also gave him a new prescription, presumably for the ibuprofen, because the prior prescription had not been renewed. (*Id.* at 5–6.)

On August 16, 2022, Nash was called to medical and Nurse Jabaar (who is not a defendant) checked his vitals and told him that he had high blood pressure. She asked him what blood pressure medication he was taking. He told her that he did not have high blood pressure, but that the nurses who had received him into the facility and screened him on April 6, 2022, had told him that he had high blood pressure and that his blood pressure would be checked for seven days. He states that Jabaar was upset when he told her this, and also upset when he showed her that his bandages and gauze for his boils had not been cleaned or changed regularly. (*Id.* at 6.)

The next day, August 17, Nash was called to medical for the site of the second boil to be cleaned. He told Eves at that time that he was not getting antibiotics or pain medications and was in pain. She lanced a third boil on that date. (*Id.*)

On August 18, Nash was in so much pain from not having antibiotics nor pain medications that he again pressed the emergency button in his cell. Again, he got no response, and so he told the deputy on duty to call medical. Eves then called him to medical to clean and change his bandage and gave him Tylenol. He was still having sharp pain throughout his body, really bad headaches, and his blood pressure was really high. (*Id.*) He also complains that Eves only numbed the site of one of his boils before lancing it, and that the lancing of the others was the worst pain he has ever experienced. He claims that the pain (from the sites of the lancing

4

without numbing first) still shoots through his body and prevents him from sleeping on his left side, and it also gives him headaches. (*Id*. at 7.)

Nash also asserts that his blood pressure was not checked at all for four months after his initial medical screening, and he believes that failure was the result of negligence by the medical staff. (*Id.* at 6.) Nash also alleges that he has a gray ring around his eyes and he does not know what caused it, but he has been unable to wear his contacts for a month because his eyes are so red and infected and he cannot see well without them. (*Id.* at 6–7.) He further states that he was supposed to be given medicated eye drops, but had not received them. (*Id.* at 7.)

Nash faults defendants Shumate and Perry for their responses to his July 23, 2022 grievance and July 28, 2022 appeal, respectively. Shumate responded that medical personnel advised that Nash removed the gauze prematurely, which caused the wound to close. And both Shumate and Lane stated that the medical staff had addressed Nash's concerns. (Dkt. No. 1-1, at 1–2.) Nash claims that these responses were improper because Shumate and Perry never spoke to Deputy Lawson when responding to Nash's grievances. (Compl. 7.) He asserts that Deputy Lawson would have backed up his statement that he did not remove the gauze.

## II. DISCUSSION

### A. Review Under 28 U.S.C. § 1915A

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring court, in a case where a plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers.

5

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**B. Deliberate Indifference Claims Under § 1983**

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

To demonstrate deliberate indifference of a constitutional magnitude, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 356–57 (4th Cir. 2019). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S.*

6

*Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).[4]

Turning first to Nash's second claim, regarding his high blood pressure, courts have recognized that high blood pressure can constitute a serious medical need. *Raybon v. Williamson*, No. 5:21-cv-00169-MR, 2022 WL 16579813, at *3 (W.D.N.C. Nov. 1, 2022) (recognizing that untreated hypertension can constitute a serious medical need); *Kovari v. Brevard Extraditions, LLC*, 461 F. Supp. 3d 353, 386 (W.D. Va. 2020) (noting that hypertension diagnosed by a medical professional and being treated with daily mediation was a serious medical need); *Barnes v. Bilak*, Civil Action No. JKB-17-1057, 2018 WL 2289232, at *6 (D. Md. May 17, 2018) ("[H]ypertension is a serious medical need and the failure to treat the same, if done with the requisite intent, would present a colorable Eighth Amendment claim.").

But Nash provides few details as to the extent of his high blood pressure. Records he attaches to his complaint show that his blood pressure on arrival—on April 6, 2022—was 174/90. (Dkt. No. 1-1, at 4.) He states that he was told his blood pressure would be monitored, but it was not checked for four months after his arrival. But his complaint does not allege that he ever complained about his blood pressure or asked that it be checked before August 16, 2022. Indeed, he alleges that he told the nurse on that date that he did not have high blood pressure. When his blood pressure was tested on that date by non-defendant Jabaar and was determined to be high, Nash immediately was prescribed medication to treat it (lisinopril, 20 mg). Less than a month later, on September 8, 2022, another blood pressure medication (amlodipine) was added to his lisinopril prescription. (Dkt. No. 1-1, at 9.) Thus, it appears he was receiving treatment before he ever filed this lawsuit.

In one of the documents attached to his complaint, however, Nash alleges that on

---

[4] It is also possible (but undetermined in the Fourth Circuit) that the second component could be an objective inquiry, post-*Kingsley*. *See supra* note 3.

unspecified dates, he was suffering from very bad headaches and not feeling well for four days straight. On those days, he came out of his cell just to ask the unnamed med tech and unnamed deputy on duty to please get a nurse check his blood pressure or call him to medical to see a doctor. He states that he never got a response. (Dkt. No. 1-1, at 4.)

As noted, for any defendant to be held individually liable for failing to treat his high blood pressure, Nash must allege facts to show that the defendant had actual knowledge of his high blood pressure or the symptoms of it, and failed to take any response. *See Gordon*, 937 F.3d at 356–57 (emphasizing that a defendant violates the Eighth Amendment only when he has *actual* knowledge of the plaintiff's medical condition and disregards any need for treatment). Even considering the allegations in his attached document, Nash has not alleged facts to show that any of the named defendants had actual knowledge that his blood pressure was high and failed to take steps to address it. Thus, he has failed to state a deliberate indifference claim against anyone with regard to his blood pressure.

Furthermore, Nash describes the conduct in failing to monitor and check his blood pressure as "negligence." But negligence, without more, does not violate the Eighth Amendment. As the Fourth Circuit has explained, "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). Even if someone in the medical department was negligent for not ensuring that Nash's blood pressure was checked in the week or months after his arrival, that action does not amount to deliberate indifference. To do so, the treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

For all of these reasons, his second claim, based on an alleged failure to regularly check

his blood pressure, does not state a constitutional violation. However, because Nash is proceeding *pro se* and because he may be able to state a claim against one or more individuals with additional allegations, the court will dismiss this claim without prejudice. Thus, if he believes he can remedy the deficiencies identified by the court, Nash may file a new complaint, in a new case, asserting a claim based on lack of treatment for his blood pressure.

As to his first claim, the court assumes without deciding—solely for purposes of this opinion—that Nash's boils and subsequent infections, along with the resulting significant pain, of which he repeatedly complained, constitute an objectively serious medical need and satisfy the first prong of his deliberate indifference claim. As discussed next, though, Nash's complaint fails to allege facts sufficient to show that most of the defendants were deliberately indifferent toward his need for treatment for his boils and related infections. The court discusses the defendants in groups.

**C. Medical Personnel Other than Sarah Eves**

First of all, as to three of the five medical defendants—specifically, Chris Adkins, Carrie Painter, and E. Biggs—they are not alleged to have taken any action or failed to take any action. Indeed, Nash does not mention them in the body of the complaint at all. Because liability under § 1983 is personal and based on a defendant's own actions, *Trulock*, 275 F.3d at 402, the claims against those defendants must be dismissed without prejudice.

With regard to defendant Deborah Damon, Nash alleges only one action by her. Specifically, on July 20, defendant Damon cleaned the site of his first boil and changed his bandage. (Compl. 5.) Nash does not allege that Damon was tasked with taking any other action, that she otherwise reviewed his chart, or *any* facts to suggest that she was deliberately indifferent to a serious medical need. The claims against her also must be dismissed.

9

**D. Detention Center Officials**

Nash's complaint also fails to state a claim against any of the detention center officials. First of all, as to defendants Shumate and Sheriff Perry, Nash's only allegation against them is that they did not properly investigate or respond to his grievances. But generally, a prison or jail administrator cannot be held liable based solely on a failure to properly process or respond to a grievance or appeal. As another judge of this court has explained:

> Accusations of improper denials of access to grievances or appeals, or of improper grievance responses, . . . do not give rise to any constitutional claim actionable under § 1983. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."); *Guinn v. Crumpler*, No. 7:18-CV-00274, 2020 WL 1666301, at *6 (W.D. Va. Apr. 3, 2020) (citing cases finding no right to grievance procedure access and denying liability for unsatisfactory grievance responses).

*Coward v. Clarke*, No. 7:20CV00702, 2022 WL 971987, at *3 (W.D. Va. Mar. 30, 2022).

Moreover, facility officials are generally entitled to rely on the decisions of treatment providers as to what treatment is needed or required; they "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002); *Miltier*, 896 F.2d at 854 (explaining that non-medical staff at a prison are entitled to rely on the opinion of medical staff as to whether the plaintiff needed additional medical care and/or testing). Further, a non-physician is not "deliberately indifferent simply because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017). Like the defendants in some of the authority above, the detention center officials here responded to his grievances by stating that he was receiving medical care from the medical staff. He has not alleged any facts to show that

10

they should have done more. The claims against Perry and Shumate must be dismissed.

Deputy Martin, like several of the medical defendants, is not mentioned in the body of the complaint and is not alleged to have taken any action or failed to take any action. Nash has failed to state a claim of a constitutional deprivation against him.

Deputies Baliles and Angles also played very limited roles, according to Nash's allegations. Based on the complaint, Deputy Baliles twice contacted medical at Nash's request, but medical never responded as Nash had hoped, in that they did not call him to medical to look at his wound or change his bandages. It is unclear what more Nash thinks Baliles should have done. But nothing about his conduct suggests that he was deliberately indifferent to Nash's condition, or that he violated any of Nash's constitutional rights. Indeed, it appears that Deputy Baliles reached out to the medical department on Nash's behalf, but was unsuccessful in getting anyone to come evaluate Nash. Moreover, it is not clear to the court that the symptoms described by Nash to Baliles are so serious that he should have known of Nash's need for medical treatment. In short, Baliles took steps in response to Nash's complaints; he did not ignore them and was not deliberately indifferent. And he, like Shumate and Perry, also was entitled to rely on the medical personnel to provide appropriate treatment.

According to documents attached to the complaint, Deputy Angles once refused to give Nash a grievance form to grieve the failure to check his blood pressure, and he told Nash that the issue was not grievable. (Dkt. No. 1-1, at 4.) First of all, it is likely that Deputy Angles was correct in his advice. In the court's experience, requests for medical services are often not grievable within the Virginia Department of Corrections or many local jails. Instead, prisoners are typically directed to request a visit with the medical department or submit a "sick call request" to see a medical professional. In any event, at most deputy Angles interfered with

11

Nash's ability to grieve a lack of medical care. Without more, however, this does not state an independent constitutional violation. *See Booker*, 855 F.3d at 541 ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (explaining that the Constitution does not create any entitlement to access a grievance procedure).

For the foregoing reasons, the claims against all of the detention center officials and deputies will be dismissed without prejudice.

**E.  Sara Eves**

With regard to defendant Sarah Eves, it is clear that she was repeatedly involved in treating Nash's boils, including lancing them and bandaging them. Nash alleges that he directly told her that he was not receiving antibiotics and that he was in significant pain, and he alleges that she failed to take prompt steps to remedy those situations. He also states that she failed to follow through on her own instructions about his bandages being regularly changed, and that his infection spread or worsened as a result. Further, he alleges that she numbed him before she lanced his first boil, but did not for the others, which caused him needless—and significant—pain. Accordingly, the court will allow only the claim against Eves to go forward. All other defendants will be dismissed. By separate order, the court will direct the Clerk to notify defendant Eves of this action.

III. CONCLUSION

To summarize, the court will dismiss without prejudice all defendants except Sarah Eves, and the Clerk will be directed to effect service on Eves. An appropriate order will be issued.

Entered: December 6, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge